UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ROBERT JOHN HANSON,

           Plaintiff,           Case No. 1:23-cv-1252

v.                                    Honorable Ray Kent

ADVANCED CORRECTIONAL
HEALTHCARE et al.,

           Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a county detainee under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5, PageID.16.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint[2] for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated at the Allegan County Correctional Center (ACCC) in Allegan, Michigan. The events about which he complains occurred at that facility. Plaintiff sues

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

[2] In an order entered on December 7, 2023, the Court directed Plaintiff to file an amended complaint on the Court's form complaint for civil actions filed under 42 U.S.C. § 1983. (ECF No. 3.) In response, Plaintiff filed an amended complaint. (ECF No. 5.) Thereafter, Plaintiff filed a letter setting forth supplemental facts (ECF No. 8), and he attached copies of several documents, which set forth various "coping skills" for anxiety (ECF No. 8-1.) In this opinion, the Court has considered Plaintiff's amended complaint and his supplemental letter with the attached exhibit.

Advanced Correctional Healthcare, the ACCC, and the Allegan County Sheriff's Department. (Am. Compl., ECF No. 5, PageID.10, 12.)

In Plaintiff's amended complaint, he states that he is currently "serving a sentence of 330 days," and that his incarceration at ACCC started on June 15, 2023.[3] (*Id.*, PageID.11.) Plaintiff states that "shortly after" June 15, 2023, he "realized [he] had a lump in his abdomen." (*Id.*) Plaintiff submitted a kite "to medical to have it looked at and was dismissed." (*Id.*) Plaintiff states that "[a] few weeks went by," and he began to have other health-related issues, including constipation, pain, and night sweats. (*Id.*) Plaintiff then submitted another kite to medical, but "again was dismissed." (*Id.*) Plaintiff alleges that the "lump has steadily grown in size and in pain," and that he told "the nurses and d[octor] of [his] past with lymphoma." (*Id.*)

Plaintiff states that he "was called to medical time and time again due to [his] complaints of pain and the lump growing," and that he was "always dismissed without any treatment." (*Id.*) Plaintiff claims that his outside primary care physician "tried and failed to have [Plaintiff] transported to see [the outside primary care physician] due to . . . concern for [Plaintiff's] health and lack of care [he] was receiving." (*Id.*) Plaintiff alleges that after six months, he had an ultrasound, which was "inconclusive." (*Id.*) Plaintiff waited a month to have another ultrasound. (*Id.*) Plaintiff claims that all he was told after the second ultrasound was that "[the lump] has grown in 30 days." (*Id.*) Plaintiff states that the lump started "as a pea size [and] now is a big gumball size and very painful." (*Id.*) Plaintiff alleges that "they offer [him] Mobic for pain, never checking to see if [he] can take that with [his] Prozac, which [he] can't." (*Id.*) "Now [Plaintiff] get[s] Tylenol for pain which does nothing." (*Id.*)

---

[3] In this opinion, the Court corrects the spelling, punctuation, and capitalization in quotations from Plaintiff's filings.

4

Plaintiff alleges that "[t]he doctor has openly mocked [him] in front of corrections officers when [Plaintiff has] been in for visits," and that it has "been almost 7 months and nothing has been done to treat the problem." (*Id.*, PageID.13.) Plaintiff claims that "pain med[ication] to cover pain is not treatment." (*Id.*)

Additionally, Plaintiff claims that the "medical department has failed to keep [his] medications filled." (*Id.*) Specifically, Plaintiff states that he "ran out of [his] Prozac," and when he asked a nurse "when [he] would have it, she replied 'I don't know. I ordered it yesterday.'" (*Id.*) Plaintiff claims "they waited until [he] ran out to even order it." (*Id.*) Plaintiff also claims "they have not even been able to keep [his] prescription for a topical steroid [that he] use[s] for psoriasis filled." (*Id.*, PageID.14.) Additionally, Plaintiff states that even though his chart indicates that he is allergic to Benadryl, after he had a panic attack, "they decide[d] to give him Benadryl for anxiety." (*Id.*, PageID.13.)

Further, Plaintiff alleges that corrections officers would not provide him with a civil rights action complaint form when he requested one, and that he has had difficulty in obtaining copies of his kites, grievances, and medical records. (*Id.*, PageID.13–14.) Plaintiff also alleges that "they [have] not allowed [him] to file complaints [about his] conditions of confinement," and "they have hindered the process [and] even tried to stop [Plaintiff] from being able to." (*Id.*, PageID.14.) Plaintiff states that he has talked with the public defender's office and was "pretty much told to figure it out on [his] own."[4] (*Id.*, PageID.15.) Additionally, the "legal coordinator" at ACCC told Plaintiff to file a FOIA request "for copies," but Plaintiff's request was denied. (*Id.*)

---

[4] Plaintiff states that he is "not sure if [he is] supposed to put down the Allegan County Public Defender's Office as a defendant or not." (Am. Compl., ECF No. 5, PageID.15.) Plaintiff does not identify the Allegan County Public Defender's Office as a Defendant when setting forth the Defendants in his amended complaint. Even setting aside the issue of whether the Allegan County Public Defender's Office is an entity that can be sued, Plaintiff's claims against the defender's

5

In Plaintiff's supplemental letter,[5] he states that on December 5, 2023, he had "run out of betamethasone," and "had a painful break out and medical did not fill [his] prescription until the 13th." (Suppl. Letter, ECF No. 8, PageID.36.) Plaintiff then "went to a nurse visit and told them [he was] supposed to be on betamethasone cream and clobetasol ointment." (*Id.*) On December 14, 2023, "they changed the order and completely stopped betamethasone," and "made [Plaintiff] go without med[ications] [until] the 16th." (*Id.*) Plaintiff then was "started . . . on clobetasol cream," and when Plaintiff "told them [he was] not supposed to use that on [his] entire body and that they gave [him] the wrong med[ications], they told [him] this is what [he was] going to get [and to] deal with it." (*Id.*)

On December 14, 2023, Plaintiff was taken to Allegan General Hospital for a CT scan of his abdomen. (*Id.*, PageID.34.) The technician at the hospital told Plaintiff that the CT scan had been ordered "without contrast," but the technician thought that Plaintiff would likely have to come back for a CT scan "with contrast." (*Id.*) Plaintiff communicated this information to the doctor at ACCC upon his return, but the doctor told Plaintiff that he "didn't know what [he] was talking about." (*Id.*) Plaintiff then filed multiple grievances "stating that the CT tech at the hospital said the lump in [Plaintiff's] abdomen more than likely would not show up in a CT scan without contrast." (*Id.*) Plaintiff states that "the jail denied all grievances and closed them." (*Id.*)

---

office would be subject to dismissal for failure to state a claim because even though a public defender is paid by the state, he or she does not act under color of state law in representing the accused. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981). Accordingly, any intended claims against the Allegan County Public Defender's Office would be subject to dismissal.

[5] In Plaintiff's supplemental letter, he lists several nurses and corrections officers that are witnesses to the events at issue in his amended complaint. (Suppl. Letter, ECF No. 8, PageID.37.) Plaintiff does not name any of these individuals as Defendants in this action.

Twenty-two days after Plaintiff's CT scan, a nurse at ACCC told Plaintiff that the results showed that he was constipated. (*Id.*, PageID.35.) The nurse also told Plaintiff that the lump in Plaintiff's abdomen had not "even show[n] up on the scan." (*Id.*) Plaintiff requested to see the doctor about the issue and requested that he receive a CT scan with contrast, but the doctor "said no." (*Id.*) The doctor prescribed Naproxen for Plaintiff's pain, but Plaintiff states that he is unable to take this medication with Prozac. (*Id.*)

Thereafter, at an appointment with a nurse at ACCC, Plaintiff was told he would have another ultrasound in six months. (*Id.*) Plaintiff states that he has already had two ultrasounds, "and all they have done is show growth over a one month period." (*Id.*) Subsequently, Plaintiff had an appointment with the doctor at ACCC, and Plaintiff "was upset" and told the doctor that "she wasn't doing anything at all to figure out what's going on." (*Id.*) Plaintiff states that "the only relief is from pain med[ications] that not only don't work but [that he] can't have with [his] other med[ications]." (*Id.*) The doctor then told Plaintiff "the visit was over and [he] had to leave." (*Id.*)

Plaintiff seeks monetary damages, as well as injunctive relief. (Am. Compl., ECF No. 5, PageID.16.)

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

7

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.  **Defendants ACCC & Allegan County Sheriff's Department**

Plaintiff sues the ACCC and the Allegan County Sheriff's Department. (Am. Compl., ECF No. 8, PageID.10, 12.) The ACCC is a building, not an entity capable of being sued in its own right. *See, e.g.*, *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) ("The McCracken County Jail is not a legal entity susceptible to suit . . .[; i]t is a department of the county . . . ."). The Allegan County Sheriff's Department also does not exist as a separate entity; it is simply an agent of the county. *See Vine v. Cnty. of Ingham*, 884 F. Supp. 1153, 1158 (W.D. Mich. 1995) (citing *Hughson v. Cnty. of Antrim*, 707 F. Supp. 304, 306 (W.D. Mich. 1988); *Bayer v. Almstadt*, 185 N.W.2d 40,

8

41 (Mich. Ct. App. 1970)). Accordingly, for these reasons alone, Defendants ACCC and Allegan County Sheriff's Department can be dismissed. Moreover, construing Plaintiff's *pro se* complaint with all required liberality, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), even if the Court assumes that Plaintiff intended to sue Allegan County, rather than the ACCC and the Allegan County Sheriff's Department, as explained below, he fails to state a claim. *See infra* Section II.B.

### B.     Allegan County & Defendant Advanced Correctional Healthcare

In addition to Defendants ACCC and Allegan County Sheriff's Department, Plaintiff sues Advanced Correctional Healthcare. (Am. Compl., ECF No. 8, PageID.10, 12.) A private entity that contracts with a governmental body to perform a traditional state function like providing healthcare to inmates, such as Advanced Correctional Healthcare, can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993); *Shadrick v. Hopkins Cnty., Ky.*, 805 F.3d 724, 736 (6th Cir. 2015). Here, Advanced Correctional Healthcare "stands in the shoes of [Allegan] County for purposes of § 1983 liability." *Shadrick*, 805 F.3d at 736. Therefore, the requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), has been extended to private corporations); *Street*, 102 F.3d at 817–18 (same); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851–52 (E.D. Mich. 2008) (same).

Allegan County and Advanced Correctional Healthcare may not be held vicariously liable for the actions of their employees under § 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell*, 436 U.S. at 694. Instead, both entities are liable only when an official policy or custom causes the injury. *Connick*, 563 U.S. at 60. This policy or custom must be the moving force behind the alleged constitutional injury, and the

plaintiff must identify the policy or custom, connect it to the governmental entity or entity contracted to provide medical care, and show that his injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003). "Governmental entities [or entities contracted by a governmental entity to provide medical care] cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged violation of constitutional rights." *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) (citing *Monell*, 436 U.S. at 692).

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the United States Court of Appeals for the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.*

Here, although Plaintiff's amended complaint and supplemental letter detail alleged wrongdoing by medical providers and corrections staff at ACCC, Plaintiff fails to allege the existence of a custom or policy, let alone that any policy or custom was the moving force behind his alleged constitutional injuries. *Cf. Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987); *see also Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation).

Moreover, even liberally construing Plaintiff's complaint, as the Court is required to do, only Plaintiff's allegations about the manner in which his medications were refilled even have a

suggestion of a potential custom at ACCC. Specifically, Plaintiff alleges that the "medical department has failed to keep [his] medications filled" and that "they waited until [he] ran out to even order it." (Am. Compl., ECF No. 5, PageID.13.) As explained below, regardless of whether Plaintiff was a pretrial detainee, in which case the Fourteenth Amendment would apply to Plaintiff's medical care-related claims, or a convicted prisoner, in which case the Eighth Amendment would apply, Plaintiff's vague and conclusory allegations regarding the refills of his medication fail to state a claim.

To state a claim for inadequate medical care under the Fourteenth Amendment, a pretrial detainee-plaintiff must show:

> (1) the plaintiff had an objectively serious medical need; (2) a reasonable officer at the scene (knowing what the particular jail official knew at the time of the incident) would have understood that the detainee's medical needs subjected the detainee to an excessive risk of harm; and (3) the prison official knew that his failure to respond would pose a serious risk to the pretrial detainee and ignored that risk.

*Trozzi v. Lake Cnty., Ohio*, 29 F.4th 745, 757–58 (6th Cir. 2022). To state a medical care claim under the Eighth Amendment, a convicted prisoner-plaintiff must allege facts showing (1) that the medical need at issue was sufficiently serious and that (2) "the official [was] both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994).

Here, although Plaintiff alleges that the medical department "failed to keep [his] medications filled" and "waited until [he] ran out to even order it," Plaintiff fails to allege any facts to suggest that any medical providers *knew* that Plaintiff needed his medication refilled. (Am. Compl., ECF No. 5, PageID.13.) Specifically, Plaintiff does not allege any facts about how he received his medications. That is, Plaintiff fails to allege any facts about whether his medication, which included topical creams and ointments as well as other oral medication, was provided to him daily directly by medical staff or whether Plaintiff was permitted to keep the medication on

11

his person and use the medication on his own. If, for example, Plaintiff was permitted to keep the medication on his person and to use it as needed, then Plaintiff himself would have needed to inform medical staff of his need for more medication. Without facts alleged about how Plaintiff received his medication, there are no facts in the amended complaint to suggest that medical staff knew that Plaintiff needed his medications refilled. Simply alleging that his medications were not kept filled without additional supporting and explanatory facts fails to satisfy even the Fourteenth Amendment standard. *See Iqbal*, 556 U.S. at 678–79 (discussing that conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983); *Twombly*, 550 U.S. at 555.

Instead, Plaintiff appears to ask the Court to infer plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim. And, although it is clear that Plaintiff wanted his prescriptions to be refilled in a different manner and disagreed with medical providers' decisions regarding how they would order his medication, "a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017) (citations omitted).

Accordingly, as set forth above, because Plaintiff fails to allege the existence of a policy or custom, Plaintiff fails to state a claim against Allegan County and Advanced Correctional Healthcare. Furthermore, even liberally construing Plaintiff's complaint to suggest the existence of a custom regarding medication refills, based on the facts alleged by Plaintiff, such a custom or policy is not indicative of either an Eighth or Fourteenth Amendment violation.

Therefore, for all of the reasons set forth above, the Court will dismiss Plaintiff's claims against all named Defendants.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   March 7, 2024                              /s/ Ray Kent
                                                    Ray Kent
                                                    United States Magistrate Judge